UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| JOHN LONG, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 6:19-cv-695-GMB ) |
| JAMES E. UNDERWOOD and BRADEN MILES, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Before the court is the Motion to Dismiss and Motion to Strike filed by Defendants James E. Underwood and Braden Miles. Doc. 6. Plaintiff John Long has filed a response in opposition to the motion. Doc. 11. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. Doc. 19. After careful consideration of the parties' submissions and the relevant law, the court finds that the motion (Doc. 6) is due to be granted.

**I. JURISDICTION AND VENUE**

The court has subject matter jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1367. The defendants do not contest personal jurisdiction or venue in the Northern District of Alabama, and the court finds

adequate allegations to support both.

## II. FACTUAL BACKGROUND

The following is a recitation of the facts as alleged in the plaintiff's state-court complaint. Doc. 1-1. This lawsuit arises out of motor vehicle accident during a high-speed police chase on April 14, 2017 in Walker County, Alabama. Doc. 1-1 at 5. Walker County deputy sheriff Braden Miles attempted to stop the driver of a motorcycle because he believed that the motorcycle had been stolen and that the driver had committed a traffic violation. Doc. 1-1 at 5. The driver refused to pull over, and instead accelerated to more than 100 miles per hour. Doc. 1-1 at 5. Miles pursued the fleeing motorcyclist in a patrol car on a rural county road for over nine miles at speeds of up to 115 miles per hour. Doc. 1-1 at 5.

While Miles and the motorcycle were traveling northbound on Alabama Highway 195, Plaintiff John Long was traveling southbound. Doc. 1-1 at 6. As the motorcyclist reached a curve at the intersection of Highway 195 and Bennett Road, he crossed the center line and collided head-on with Long's vehicle. Doc. 1-1 at 6. As a result of the accident, Long suffered significant injuries and totaled his vehicle. Doc. 1-1 at 6. The driver of the motorcycle did not survive the crash. Doc. 1-1 at 6.

Long alleges that Walker County Sheriff James E. Underwood "failed to develop and implement adequate policies, procedures, customs, or practices, to protect the public from the foreseeable result that bystanders such as Long would be harmed by deputies engaged in high-speed chases." Doc. 1-1 at 6. He also alleges

that both defendants exhibited a "malicious and intentional disregard" of Long's "constitutional rights to purposefully inflict harm." Doc. 1-1 at 7.  As a result, "Long suffered from physical injury, pain, suffering, emotional distress, anxiety, and duress, as well as a loss of personal property." Doc. 1-1 at 7.

Long filed suit on April 12, 2019 in the Circuit Court of Walker County, Alabama, naming Miles and Sheriff Underwood as defendants.  The defendants removed the case to this court on May 7, 2019.  Long brings three constitutional claims under 42 U.S.C. § 1983: (1) violation of his Fourteenth Amendment right to substantive due process against Miles, (2) failure to train and supervise against Sheriff Underwood, (3) and failure to train and supervise against fictitious defendants. Doc. 1-1 at 7–12.  He also alleges state-law negligence-based claims against both Miles and Sheriff Underwood. Doc. 1-1 at 12.  The defendants seek dismissal of the complaint in its entirety.

### III.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

### A. Motion to Strike

Long's third cause of action is a § 1983 failure-to-train claim against any unnamed defendants who may have "failed to adequately train, supervise, and discipline Miles on conducting a high-speed pursuit." Doc. 1-1 at 11. Long anticipates that he will name these defendants "by amendment when [their identities are] ascertained." Doc. 11 at 23.

"As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). A "limited exception" to the general rule exists where "the plaintiff's description of the defendant is so specific as to be, at the very worst, surplusage." *Id.* (citation and internal quotation marks omitted). Long's description of the fictitious defendants here falls outside of this limited exception. Far from specific, Long essentially describes any person who may be subject to liability on a supervisory basis. Doc. 1-

4

1 at 10–12. Thus, Long's claims against the fictitious defendants are impermissibly vague, and the defendants' motion to strike is due to be granted.[1]

**B.      Sovereign Immunity for Official Capacity Claims**

The Eleventh Amendment to the United States Constitution prohibits suits for money damages against a state by citizens of that state. *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990). This immunity has been extended to suits against state officials in their official capacities where monetary damages would be paid by the state. *Id.* To determine whether an official is protected by Eleventh Amendment immunity, courts look to the laws of the particular state in question. *Melton v. Abston*, 841 F.3d 1207, 1234 (11th Cir. 2016).

The Alabama Constitution provides that sheriffs are members of the state's executive branch. *Id.* (citing Ala. Const. Art. V § 112). Accordingly, "as an executive officer, a sheriff is immune from being sued in the execution of the duties of his office under Art. I, § 14, Alabama Const. 1901." *Id.* (internal quotation marks omitted). "It is well established in this Circuit that Alabama sheriffs and their deputies are state officials and are absolutely immune from suit as an officer of the state under the Eleventh Amendment." *Id.* Suits against sheriffs and their deputies for "actions taken in the line and scope of their employment" constitute suits against the state, and are therefore prohibited by § 14. *Ex Parte Shelley*, 53 So. 3d 887, 895

---

[1] These claims, if stated against identified defendants, likely would be dismissed for the same reasons the failure-to-train claim against Sheriff Underwood fails.

5

(Ala. 2009). "The wall of immunity erected by § 14 is nearly impregnable." *Patterson v. Gladwin Corp.*, 835 So. 2d 137, 142 (Ala. 2002).

The Alabama Supreme Court has described five exceptions to § 14 immunity:

> Section 14 immunity is not applicable when an action is brought: (1) to compel state officials to perform their legal duties; (2) to compel state officials to perform ministerial acts; (3) to enjoin state officials from enforcing unconstitutional laws; (4) to enjoin state officials from acting in bad faith, fraudulently, beyond their authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act.

*Parker v. Amerson*, 519 So. 2d 442, 445 (Ala. 1987). None of these exceptions applies in this case since Long has sued purely for monetary damages. *See* Doc. 1-1 at 3. Thus, because Long has brought suit against Miles and Sheriff Underwood in their official capacities for monetary damages, these claims are barred by the Eleventh Amendment.[2] *See, e.g.*, *Melton*, 841 F.3d at 1234 (holding that a sheriff and deputy sheriffs were "immune from suit under the Eleventh Amendment for [the plaintiff's] claims brought against them in their official capacity as state officials").

C.  **Individual Capacity Claims**

   1.  *Qualified Immunity*

Long seeks to hold Miles liable under § 1983 in his individual capacity under the premise that he "intentionally, maliciously, and purposefully" violated Long's

---

[2] Eleventh Amendment immunity is subject to two limited exceptions: where the state has statutorily waived its immunity and where Congress has limited the state's immunity. *See Carr*, 916 F.2d at 1524. Neither exception applies here because Alabama has not waived its immunity and Congress has not abrogated Alabama's immunity in § 1983 cases. *See id.* at 1525.

substantive due process rights under the Fourteenth Amendment by engaging in the high-speed pursuit. Doc. 1-1 at 7–8. He also asserts a § 1983 claim against Sheriff Underwood for an alleged failure to train or supervise. Doc. 1-1 at 8–10.

Miles and Sheriff Underwood contend that they are entitled to qualified immunity against Long's individual-capacity claims. Doc. 6 at 10–19. Qualified immunity shields government officials performing discretionary functions from suit "in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (citation and internal quotation marks omitted). Its purpose is to hold public officials accountable for legitimately unlawful conduct while protecting them from burdensome lawsuits when they have acted reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To be entitled to qualified immunity, a "public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). If the public official has done so, the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate. *Dalrymple*, 334 F.3d at 995. To satisfy this burden, the plaintiff must demonstrate that the defendant committed a violation of a constitutional right and that this right was "clearly established" at the time of the alleged violation. *Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016).

When a defendant raises the defense of qualified immunity on a Rule 12(b)(6)

motion, the court applies the familiar *Twombly/Iqbal* plausibility standard. *See, e.g.*, *Bowen v. Warden Baldwin St. Prison*, 826 F.3d 1312, 1319 (11th Cir. 2016); *Randall v. Scott*, 610 F.3d 701, 707–10 (11th Cir. 2010); *Williams v. Ala. St. Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997) (stating that the defendants are entitled to qualified immunity on a motion to dismiss if the complaint "fails to allege the violation of a clearly established constitutional right"). The court "begin[s] by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall*, 610 F.3d at 709–10. As it would on any other motion to dismiss, the court accepts the truth of well-pled factual allegations "and then determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* at 710.

There is no indication that Miles and Sheriff Underwood were acting outside of the scope of their discretionary authority during any of the conduct at issue, and Long does not argue otherwise. *See* Doc. 11 at 16–21. Instead, Long focuses his attention on arguing that he appropriately alleged a constitutional violation. *See* Doc. 11 at 17–21. The court disagrees.

In *County of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998), the United States Supreme Court held that a police officer does not violate an individual's Fourteenth Amendment substantive due process rights "by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender." In that case, police chased a motorcycle driven by an 18-

year-old boy with a 16-year-old passenger at speeds of up to 100 miles per hour through a residential neighborhood. *Id.* at 836–37. The motorcycle flipped on a sharp left turn, ejecting both boys. *Id.* at 837. The trailing patrol car struck and killed the 16-year-old passenger. *Id.* The resulting complaint alleged "a variety of culpable states of mind: 'negligently responsible in some manner,' 'reckless and careless,' 'recklessness, gross negligence and conscious disregard for [the plaintiff's] safety,' and 'oppression, fraud and malice.'" *Id.* at 854 (citations omitted). Finding that liability could stand only where there was a "purpose to cause harm unrelated to the legitimate object of arrest" such that an officer's conduct "shocked the conscience," the Supreme Court declared that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment." *Id.* at 836 & 853–54.

Here, Long has not alleged that Miles had a purpose to cause harm unrelated to the legitimate object of arrest as he pursued the driver of the motorcycle. Instead, Long alleges that Miles "failed to respond in an objectively reasonable manner" to the fleeing motorcyclist and "deliberately and recklessly disregarded the risk to bystanders like Long by continuing to press the suspect to operate the motorcycle at a high rate of speed." Doc. 1-1 at 7. In doing so, Long alleges that Miles "acted intentionally, maliciously, and purposefully to harm Miles in such a manner that is shocking to the conscience." Doc. 1-1 at 7–8. While this statement facially conforms with the *Lewis* Court's articulation of a shocks-the-conscience test for high-speed

9

police pursuits, it is not supported by any plausible factual allegations that Miles intended to cause harm. Rather, Long's own allegations sink his claim, as he concedes in the complaint that Miles pursued the motorcycle because he believed it was stolen and the driver had committed a traffic violation. Doc. 1-1 at 5. Because a "formulaic recitation of the elements of a cause of action" is insufficient to state a viable claim, Long has not plausibly alleged a constitutional violation, and Miles and Sheriff Underwood are entitled to qualified immunity on Long's § 1983 claims against them in their individual capacities.

### 2. *Failure-to-Train Claim Against Sheriff Underwood[3]*

Axiomatically, where there is no constitutional violation, a plaintiff "cannot maintain a § 1983 action for supervisory liability . . . for failure to train." *Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005). But even if Long had successfully alleged a constitutional violation, his failure-to-train claim against Sheriff Underwood in his individual capacity still would fall short.

"The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Supervisors cannot be held liable on a *respondeat superior* basis. Instead, the plaintiff must allege "that the supervisor either directly

---

[3] Long characterizes this claim in the state-court complaint as a "Failure to Train and Supervise Under the 14th Amendment," and in the complaint and in briefing he references the legal standards for both failure-to-train and supervisory liability claims. Doc. 1-1 at 8–10. Accordingly, the court will analyze this claim under both standards which, as discussed below, are quite similar.

10

participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb County, Ga.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014). To show a causal connection, the plaintiff must allege that a "history of widespread abuse" should have put the supervisor "on notice of the need to correct the alleged deprivation," and the supervisor nevertheless failed to act. *Cottone*, 326 F.3d at 1360. Alternatively, the plaintiff must identify a "custom or policy" of the supervisor's that resulted in "deliberate indifference to constitutional rights. *Id.* Finally, a plaintiff could allege that the supervisor either directed the subordinates to act unlawfully or knew that they would do so and failed to stop them. *Id.* "In short, the standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." *Keith*, 749 F.3d at 1048 (internal quotation marks omitted).

Long has not claimed that Sheriff Underwood either personally participated in the pursuit or directed Miles to act unlawfully. He has not identified any custom or policy of Sheriff Underwood's that resulted in deliberate indifference to constitutional rights. And he has not pled any facts suggesting that Sheriff Underwood specifically knew that his officers would act unlawfully but failed to stop them from doing so.

Long also characterizes his claim against Sheriff Underwood as a failure-to-train claim, which "implicates a different, albeit very similar, rule." *Keith*, 749 F.3d

at 1052. "[U]nder § 1983, a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is a "stringent standard of fault," and exists only when "policymakers are on actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). To establish actual or constructive notice, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Connick*, 563 U.S. at 62 (internal quotation marks omitted). A plaintiff must allege that the supervisor, armed with the knowledge of past constitutional violations, "chose to retain that training program." *Keith*, 749 F.3d at 1052.

Here, Long's complaint is long on legal conclusions and short on corresponding factual support. While he alleges the elements of a § 1983 failure-to-train claim, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Long alleges that Sheriff Underwood failed to "adequately train, supervise, and discipline law enforcement personnel on conducting high-speed pursuit," and did not "implement procedural controls to protect innocent bystanders from unrestrained law enforcement personnel in the conduct of high-speed pursuit." Doc. 1-1 at 9. But Long has not identified any past incidents involving high-speed police chases in

Walker County—let alone a pattern of such incidents—that would have put Sheriff Underwood on notice of the potential for the accident that occurred here. Indeed, Long does not identify any training program or explain how its deficiency leads to a deprivation of constitutional rights in Walker County. As a result, even if he had adequately pled a constitutional violation, Long has not alleged the facts necessary to allow the court to draw a reasonable inference that Sheriff Underwood was deliberately indifferent to an obvious need to train his employees. *Iqbal*, 676 U.S. at 678. Instead, he has suggested the mere "possibility of misconduct." *Id.* at 679.

Nevertheless, as Long points out in briefing, the Supreme Court has "hypothesized" that "in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference." *Connick*, 563 U.S. at 63. The Supreme Court reasoned in *City of Canton*, 489 U.S. at 390 n.10 (citation omitted), that because "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons," and cities arm their officers with firearms "in part to allow them to accomplish this task[,] the need to train officers in constitutional limitations on the use of deadly force can be said to be 'so obvious[]' that a failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights."

Long asserts that he has met this burden by alleging that Sheriff Underwood had a policy of failing to train his officers to safely conduct high-speed pursuits despite the fact that such pursuits place bystanders "at a substantial risk of injury."

Doc. 11 at 20–21. However, guidance in the application of the single-incident liability exception is scant, "as neither the Supreme Court nor Eleventh Circuit has ever applied it." *Whitaker v. Miami-Dade County*, 126 F. Supp. 3d 1313, 1325 (S.D. Fla. 2015). In *Whitaker*, a district court applied the single-incident liability exception where the plaintiffs claimed that a Florida county acted with deliberate indifference to its citizens' civil rights by failing to properly train its police officers on the use of deadly force. *See id.* at 1323. The plaintiffs argued that they had identified the existence of a widespread practice of police officers using excessive force, but that the single-incident exception would have applied even if they had not done so. *See id.*

Unlike Long, the two decedents in *Whitaker* were fatally shot by police officers after a police chase. *Id.* at 1317. Citing to *Iqbal*, the court concluded that the complaint's allegations were "not well-pled facts, but rather conclusory allegations not entitled to the presumption of truth." *Id.* at 1327. That is because the plaintiffs' factual allegations did "not give rise to the reasonable inference that the deaths were a result of the County's deliberate indifference to" the decedents' constitutional rights. *Id.* The complaint did not allege that a policymaker for the county made a conscious decision not to train its officers or that it was obvious that the failure to do so would result in a violation of citizens' constitutional rights. *Id.*

Identically, Long has alleged no actual facts suggesting that there was an "obvious need" for training in the Walker County Sheriff's Office that went unmet.

14

Instead, he relies purely on legal conclusions and boilerplate § 1983 language, which are insufficient under the *Iqbal*/*Twombly* regime. Like the *Whitaker* plaintiffs, Long has done little, if anything, to tie the constitutional deprivation alleged in this case to a specific lack of training. He does not plead any facts showing that Sheriff Underwood made the conscious decision not to train his officers in the face of an obvious need, or that this failure would obviously result in a constitutional violation. For all of these reasons, Long's failure-to-train claim against Sheriff Underwood is due to be dismissed.

**D.     State-Law Claims**

Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over Long's remaining state-law negligence-based claims because Long's federal claims will be dismissed. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction"). In fact, where all federal claims are dismissed prior to trial, district courts are encouraged to dismiss any remaining state claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). Before dismissing the remaining state-law claims,

15

the court must consider the factors of judicial economy, convenience, fairness, and comity. *See Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 532 (11th Cir. 2015) (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

"Both comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). "Federal courts are (and should be) loath to wade into uncharted waters of state law, and should only do so when absolutely necessary to the disposition of a case." *Ameritox*, 803 F.3d at 540. Indeed, the Supreme Court has declared that "[n]eedless decisions of state law should be avoided as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Here, the court finds no reason to depart from this practice by adjudicating Long's state-law claims if his federal claims are dismissed prior to trial. Further, there is nothing before the court to suggest that the remaining factors—convenience and fairness—weigh in favor of retaining subject-matter jurisdiction. Moreover, the court can discern no possibility of significant prejudice to Long, particularly in light of § 1367(d)'s provision tolling the statute of limitations for his remaining claims under state law. *See* 28 U.S.C. § 1367(d). Accordingly, the court declines to exercise supplemental jurisdiction over Long's state-law claims pursuant to § 1367(c)(3).

## V. CONCLUSION

Based on the foregoing, it is ORDERED that Defendants' Motion to Dismiss

and Motion to Strike (Doc. 5) is GRANTED, and all federal claims asserted by Plaintiff John Long are DISMISSED with prejudice. It is further ORDERED that Long's state-law claims are DISMISSED without prejudice.

A separate judgment will be entered.

DONE and ORDERED on December 4, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE